**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **INTERBANK, SUCCESSOR BY MERGER TO VINTAGE BANK,** § § § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. _____ |
| § | |
| **WILLIAM D. PROPES, MARSHA NEWBERRY, and COREY TOMPKINS,** § § § | |
| § | |
| Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Plaintiff InterBank, successor by merger to Vintage Bank (hereafter "Plaintiff" or "the Bank") and files this its *Original Complaint*, complaining of Defendants William D. Propes, Marsha Newberry, and Corey Tompkins, and respectfully shows as follows:

### I.  THE PARTIES AND SERVICE

1. Plaintiff is a financial institution organized under the laws of the state of Oklahoma with its principal office located at 4921 North May Avenue, Oklahoma City, OK 73112.

2. Defendant **William D. Propes** is an individual and resident of Texas, who may be served with process at 617 Edgewood Lane, Ovilla, TX 75154, or such other place as he may be found.  Summons is requested.

3. Defendant **Marsha Newberry** is an individual and resident of Texas, who may be served with process at 1510 Jelmak St., Grand Prairie, TX 75050, or such other place as she may

PLAINTIFF'S ORIGINAL COMPLAINT– Page 1

be found.  Summons is requested.

4. Defendant **Corey Tompkins** is an individual and resident of Texas, who may be served with process at 3718 Bluegrass Dr., Grand Prairie, TX 75052, or such other place as he may be found.  Summons is requested.

## II.  JURISDICTION AND VENUE

5. This Court has jurisdiction over the controversy under 28 U.S.C. §1332 because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

6. Plaintiff is an Oklahoma corporation with its principal place of business in Oklahoma, making it a citizen of Oklahoma for diversity purposes.

7. Defendant William D. Propes is an individual and resident of Texas

8. Defendant Marsha Newberry is an individual and resident of Texas.

9. Defendant Corey Tompkins is an individual and resident of Texas.

10. Venue is proper in the Northern District of Texas, Dallas Division, under 28 U.S.C. Section 1391(a)(2) because a substantial part of the events and omissions that give rise to the controversy occurred in this Division and District.  Furthermore, the contracts at issue mandate venue within this Division and District.

## III.  FACTS

### A. THE SCS NOTE.

11. On or about October 16, 2013, for good and valuable consideration, Signature Contracting Services, LLC ("SCS") executed and delivered to Plaintiff's predecessor-by-merger, Vintage Bank, and its successors and assigns, a *Commercial Promissory Note*, Loan Number

PLAINTIFF'S ORIGINAL COMPLAINT– Page 2

711345300, in favor of Vintage Bank in the amount of $13,658.48 (the "SCS Note").

12. A true and correct copy of the SCS Note is attached hereto and identified as **Exhibit "A"**.

13. The SCS Note is guaranteed by Defendants William D. Propes ("Propes"), Marsha Newberry ("Newberry"), and Corey Tompkins ("Tompkins") (Propes, Newberry, and Tompkins are collectively referred to as the "Guarantors" or the "Defendants").

14. On or about October 16, 2013, Propes executed that certain *Unlimited Continuing Payment Guaranty* (the "Propes SCS Guaranty"). A true and correct copy of the Propes SCS Guaranty is attached as **Exhibit "B"** hereto.

15. On or about October 16, 2013, Newberry executed that certain *Unlimited Continuing Payment Guaranty* (the "Newberry SCS Guaranty"). A true and correct copy of the Newberry SCS Guaranty is attached as **Exhibit "C"** hereto.

16. On or about October 16, 2013, Tompkins executed that certain *Unlimited Continuing Payment Guaranty* (the "Tompkins SCS Guaranty"). A true and correct copy of the Tompkins SCS Guaranty is attached as **Exhibit "D"** hereto.

17. Collectively, the Propes SCS Guaranty, Newberry SCS Guaranty, and Tompkins SCS Guaranty shall herein be referred to as the "SCS Guaranties".

18. The SCS Note is secured by personal property of SCS. Any funds received from the disposition of such collateral will be credited to the SCS Note debt.

### B. THE SOS NOTES.

19. On or about July 24, 2013, for good and valuable consideration, SOS Equipment Leasing Company, LLC ("SOS") executed and delivered to Vintage Bank, and its successors and

PLAINTIFF'S ORIGINAL COMPLAINT– Page 3

assigns, a *Commercial Promissory Note*, Loan Number 711331500 (the "Original A Note"), in favor of Vintage Bank in the amount of $4,950,000.00. The Original A Note was subsequently modified by that certain *Commercial Promissory Note Renewal and Renewal Agreement* (collectively, the "A Note Renewal") dated March 26, 2015. The Original A Note and the A Note Renewal are hereinafter referred to collectively as the "A Note". A true and correct copy of the A Note is attached and identified as **Exhibit "E"** hereto.

20.     Further, on or about March 26, 2015, for good and valuable consideration, SOS executed and delivered to Vintage Bank a *Commercial Promissory Note*, Loan Number 711352900 (the "B Note"), in favor of Vintage Bank in the amount of $275,766.45. A true and correct copy of the B Note is attached and identified as **Exhibit "F"** hereto. The A Note and the B Note are hereinafter referred to collectively as the "SOS Notes".

21.     The SOS Notes are secured by that certain *Commercial Security Agreement* and that certain *Hypothecation Agreement* dated and executed as of March 26, 2015 (collectively, the "SOS Security Agreement"), granting Vintage Bank a lien interest on, *inter alia*, all of the equipment owned by SOS.

22.     The SOS Notes are guaranteed respectively by Defendants Propes, Newberry, and Tompkins.

23.     On or about March 26, 2015, Propes executed that certain *Unlimited Continuing Payment Guaranty* (the "Propes SOS Guaranty"). A true and correct copy of the Propes SOS Guaranty is attached as **Exhibit "G"** hereto.

24.     On or about March 26, 2015, Newberry executed that certain *Unlimited Continuing Payment Guaranty* (the "Newberry SOS Guaranty"). A true and correct copy of the

Newberry SOS Guaranty is attached as **Exhibit "H"** hereto.

25. On or about March 26, 2015, Tomkins executed that certain *Unlimited Continuing Payment Guaranty* (the "Tompkins SOS Guaranty"). A true and correct copy of the Tompkins SOS Guaranty is attached as **Exhibit "I"** hereto.

26. Collectively, the Propes SOS Guaranty, Newberry SOS Guaranty and the Tompkins SOS Guaranty shall herein be referred to as the "SOS Guaranties".

### C. DEFAULT ON THE SCS NOTE.

27. Plaintiff is the current owner and holder of the SCS Note and the SCS Guaranties.

28. SCS has defaulted under the SCS Note.

29. Plaintiff sent a written *Notice of Default and Acceleration* on or about or about August 24, 2016, notifying SCS and the Defendants that InterBank had accelerated the debt evidenced by the SCS Note and the entire outstanding principal balances of the SCS Note, together with all accrued but unpaid interest and any other amounts due pursuant to the Loan Documents, were fully due and payable. Defendants remain, as of September 8, 2016, indebted to InterBank in the subtotal of $9,903.29. Further, interest, late charges, and fees have accrued on the balance and Plaintiff has incurred attorneys' fees and expenses in prosecuting the foreclosure sale and bringing this lawsuit. As of September 8, 2016, Defendants are indebted to InterBank in the sum of $10,686.85 (the "SCS Note Deficiency"). Interest and late charges continue to accrue on Defendants' account and attorneys' fees will continue to accrue as well.

30. Pursuant to the terms of the SCS Note and the SCS Guaranties thereto, Defendants are liable to InterBank for the SCS Note Deficiency. The Defendants, despite demand, failed to satisfy their guaranty of payment of the SCS Note. As of the filing of this suit,

PLAINTIFF'S ORIGINAL COMPLAINT– Page 5

Defendants have not paid InterBank the SCS Note Deficiency.

### D. DEFAULT ON THE SOS NOTES.

31. Plaintiff is the current owner and holder of the SOS Notes and the SOS Guaranties.

32. SOS has defaulted under the SOS Notes.

33. Plaintiff sent a written *Notice of Default and Acceleration* on or about September 30, 2015, notifying SOS and the Defendants that Plaintiff had accelerated the entire outstanding principal balances of the SOS Notes, together with all accrued but unpaid interest and any other amounts due pursuant to the SOS Note documents, making the debt evidenced by the SOS Notes fully due and payable. The Defendants, despite demand, failed to satisfy their guaranty of payment of the SCS and SOS Notes.

34. Following the default of SOS and acceleration of the SOS debt, Plaintiff noticed the SOS collateral equipment for sale pursuant to Article 9 of the TEXAS BUSINESS AND COMMERCE CODE (the "UCC Sale"). The UCC Sale occurred on January 14, 2016 and after costs of the auction were deducted Plaintiff received $1,884,838.10 from the auction of the SOS collateral (the "Sale Proceeds").

35. After crediting the Sale Proceeds from the January 14, 2016 public auction to the indebtedness evidenced by the SOS Notes, Defendants remain, as of September 8, 2016, indebted to Plaintiff in the subtotal of $2,939,078.24. Further, interest, late charges, and fees have accrued on the balance and Plaintiff has incurred attorneys' fees and expenses in prosecuting the foreclosure sale and bringing this lawsuit. As of September 8, 2016, Defendants are indebted to Plaintiff in the sum of $3,300,201.92 (the "SOS Notes Deficiency"). Interest and

PLAINTIFF'S ORIGINAL COMPLAINT– Page 6

late charges continue to accrue on Defendants' account and attorneys' fees will continue to accrue as well.

36. Pursuant to the terms of the SOS Notes and the SOS Guaranties thereto, Defendants are liable to Plaintiff for the SOS Notes Deficiency. As of the filing of this suit, Defendants have not paid Plaintiff the SOS Notes Deficiency.

37. Collectively, the SOS Notes Deficiency and the SCS Note Deficiency shall herein be referred to as the "Deficiencies".

## IV.  CAUSES OF ACTION

### A.  SUIT ON THE GUARANTY AGREEMENTS.

38. The preceding paragraphs are incorporated herein for all purposes.

39. The Deficiencies are due and owing from SCS and SOS to Plaintiff under the SCS Note and SOS Notes. Under the terms of the abovementioned SCS Guaranties and SOS Guaranties, the Guarantors' guaranty of payment is equal to the full amount due under the SOS Notes and SCS Note and all costs (including principal, interest, and late fees), expenses and attorneys' fees incurred by Plaintiff in connection with any default under the SCS Note and SOS Notes or the SCS Guaranties and SOS Guaranties.

40. Plaintiff is the owner and holder of the SCS Note and SOS Notes and the Guaranties. The terms of the SCS Note and SOS Notes and the SCS Guaranties and SOS Guaranties clearly and unambiguously establish the liability of Defendants for payment to Plaintiff as described above. Plaintiff was enticed to extend credit to SCS and SOS based in substantial part on the SCS Guaranties and SOS Guaranties and relied on the SCS Guaranties and SOS Guaranties in providing such credit. SCS and SOS have failed to pay Plaintiff the

PLAINTIFF'S ORIGINAL COMPLAINT– Page 7

Deficiencies. As a result of Defendants' failure to guaranty payment under the SCS Note and SOS Notes, Plaintiff has suffered damages above the jurisdictional minimums to confer jurisdiction upon this Court.

41. All conditions precedent to Plaintiff's recovery of the SCS Guaranties and SOS Guaranties have been performed, have occurred, or have been waived.

### B. SUIT FOR ATTORNEYS' FEES.

42. The preceding paragraphs are incorporated herein for all purposes.

43. In connection with the Suit on the SCS Guaranties and SOS Guaranties, Plaintiff seeks to recover its reasonable and necessary attorneys' fees from Defendants. Under the terms of the SCS and SOS Notes, Defendants agreed to pay Plaintiff for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Plaintiff in connection with the enforcement of the SCS and SOS Notes in any litigation. Additionally, Plaintiff seeks to recover its reasonable and necessary attorneys' fees from Defendants pursuant to Chapter 38 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. All conditions precedent to Plaintiff's recovery of attorneys' fees have been performed, have occurred, or have been waived.

### V. PRAYER

WHEREFORE, Plaintiff requests that the Defendants be cited to appear and answer herein and that, upon final hearing, Plaintiff have and recover a judgment against the Defendants for damages as pled herein, plus interest and attorneys' fees, and all costs of suit. Plaintiff further requests such other and further relief to which it may be entitled.

Respectfully submitted,

HIGIER ALLEN & LAUTIN

By: /s/ Jason T. Rodriguez
    Jennifer L. Owen
    State Bar No. 15369050
    jowen@higierallen.com
    Jason T. Rodriguez
    State Bar No. 24042827
    jrodriguez@higierallen.com
    Thomas W. Kniest II
    State Bar No. 24078798
    tkniest@higierallen.com
    The Tower at Cityplace
    2711 N. Haskell Ave., Suite 2400
    Dallas, Texas  75204
    Telephone: (972) 716-1888
    Facsimile:  (972) 716-1899
    ATTORNEYS FOR PLAINTIFF